751 F.2d 1424
 118 L.R.R.M. (BNA) 2193, 36 Empl. Prac. Dec. P
34,939,
243 U.S.App.D.C. 205
 FEDERAL/POSTAL/RETIREE COALITION, AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, Appellants
American Federation of State, County and Municipal Employees
Council 26, et al.
v.
Donald J. DEVINE, Director, Office of Personnel Management, et al.
NATIONAL TREASURY EMPLOYEES UNION, Appellant
v.
Donald J. DEVINE, Director, Office of Personnel Management
 Nos. 84-5040, 84-5057.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 14, 1984.
Decided Jan. 15, 1985.
 
 Charles A. Hobbie, Washington, D.C., with whom Mark D. Roth, Washington, D.C., was on brief, for appellants Federal/Postal/Retiree Coalition in No. 84-5040.
 Gregory O'Duden, Washington, D.C., for appellant National Treasury Employees Union in No. 84-5057. Lois G. Williams and Kerry L. Adams, Washington, D.C., entered appearances for appellant.
 William G. Cole, Atty., Dept. of Justice, Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees in Nos. 84-5040 and 84-5057.
 Before TAMM, GINSBURG, and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STARR.
 STARR, Circuit Judge:
 
 
 1
 These consolidated cases present challenges to the legality of the Office of Personnel Management's proposal to publish a Federal Personnel Manual issuance on labor-management relations. Various labor organizations filed suit in the United States District Court for the District of Columbia challenging the authority of the Office of Personnel Management ("OPM") under the Civil Service Reform Act of 1978, 5 U.S.C. Sec. 7101 et seq. ("CSRA" or "Act"), to promulgate guidelines on this subject. In the labor organizations' view, the CSRA, in working a fundamental transformation of the Nation's civil service laws, vested all responsibility exclusively in the Federal Labor Relations Authority ("FLRA" or "Authority") for providing policy guidance and advice to administrative agencies with respect to labor-management relations. The District Court rejected plaintiffs' contentions, concluding that OPM had acted within its province in determining to issue what the court deemed to be non-compulsory guidelines. We agree and affirm.
 
 
 2
 * The watershed nature of the CSRA has been adequately treated elsewhere, see, e.g., BATF v. FLRA, --- U.S. ----, 104 S.Ct. 439, 441-42, 78 L.Ed.2d 195 (1983); National Treasury Employees Union v. FLRA, 691 F.2d 553, 554-55 (D.C.Cir.1982); Department of Defense v. FLRA, 659 F.2d 1140, 1144-47 (D.C.Cir.1981), and need not be rehearsed in detail here. It is sufficient for present purposes to observe the principal organizational changes effected by this landmark legislation, for it is the structural modification in the framework of civil service administration and management that bear most directly on our case.
 
 
 3
 As is by now well known, the Civil Service Commission was dispatched by the CSRA; its various functions live on, however, divided among several new entities, including OPM, the Merit Systems Protection Board and the Office of Special Counsel. Of especial relevance to the inquiry before us, the new statute created the FLRA, an independent entity within the Executive Branch, with various enumerated functions in respect of labor-management relations.
 
 
 4
 Title VII of the CSRA is critical to our inquiry. It stands, in effect, as the new statutory charter establishing both the framework and the substantive law governing the relationship between labor and management in the federal civil service. The powers and duties of the Authority are set forth in section 701 of Title VII of the Act, 5 U.S.C. Sec. 7105. Among those powers is the following: "The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter ...." 5 U.S.C. Sec. 7105(a)(1). OPM, in contrast, is expressly mentioned in only one provision of Title VII, namely section 701(i), 5 U.S.C. Sec. 7105(i). There, as part of the enumerated powers of the Authority, the FLRA is vested with discretionary powers to "request from the Director of [OPM] an advisory opinion concerning the proper interpretation of rules, regulations, or policy directives issued by [OPM] in connection with any matter before the Authority." OPM's responsibilities are thus nowhere to be found in the labor-management relations portion of the Act; rather, one must turn back to Title II of the statute to learn of OPM's duties, which pertain, in brief, to the personnel management functions previously carried out by the old Civil Service Commission.
 
 
 5
 The complicating feature in this otherwise clearly delineated set of roles is Title VII's grandfather provision, 5 U.S.C. Sec. 7135, a provision of pivotal importance to the resolution of this case. One part of that section, which is set out in the text below in Part II of our opinion, expressly mandates that the pre-CSRA slate was not to be wiped clean. Quite to the contrary, the statute in the clearest of terms kept alive en toto the pre-CSRA regime, including Executive Orders and decisions under those orders by the old Federal Labor Relations Council, unless the President revised or revoked those orders or unless those "[p]olicies, regulations, ... procedures ... and decisions" were "superseded by specific provisions of this chapter."[1] As we will now see, this case turns on whether Congress has superseded by means of specific provisions a policy guidance and advisory function which OPM, as successor in this respect to the Civil Service Commission, has sought to continue through its proposed issuance.
 
 II
 
 6
 * We pause briefly at the threshold to analyze whether the issue of OPM authority to publish the Federal Personnel Manual ("FPM") issuance is ripe for judicial resolution. OPM has, after all, not actually promulgated the new guidelines; it has, instead, twice published in the Federal Register a notice of its intention to publish an FPM issuance "on management rights, consultation and scope of bargaining policy in labor-management relations."[2] Litigation erupted almost instantly, as the National Treasury Employees Union ("NTEU") was in court within less than a week of the publication of the first notice in the Federal Register. Since nothing had happened beyond publication of a notice of OPM's intent to take action, the District Court went to some lengths to analyze whether OPM's action was ripe for review. Concluding that the well-established test of ripeness laid down originally in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), was satisfied, Memorandum Opinion at 7-11, reprinted in NTEU J.A. at 82, 88-92, the District Court emphasized that OPM's intention to publish guidelines in substantially the form set forth in the two notices of March 30, 1983 and July 14, 1983, squarely presented for resolution the legal issue "whether OPM has authority to issue the policy guidance as a whole." Id. at 11. It was that pivotal legal issue which, the court concluded, was ripe for review. We agree with the District Court's conclusion, see Independent Bankers Ass'n of America v. Smith, 534 F.2d 921, 927-29 (D.C.Cir.1976), and move on to the merits.
 
 B
 
 7
 Section 25(a) of Executive Order ("E.O.") 11,491, as amended, provides in pertinent part that "[t]he Office of Personnel Management, in conjunction with the Office of Management and Budget, shall establish and maintain a program for the policy guidance of agencies on labor-management relations in the Federal Service and periodically review the implementation of these policies."[3] Exec.Order No. 11,491 Sec. 25(a), 3 C.F.R. 861, 874-75 (1966-70 Comp.), as amended by Exec.Order No. 11,616, 3 C.F.R. 605, 609 (1971-75 Comp.), as amended by Exec.Order No. 12,107, 44 Fed.Reg. 1055, 1063 (1979) (emphasis added). This language, if still in effect, would plainly give OPM the authority to issue the proposed policy guidance. Under the grandfather provision of Title VII, 5 U.S.C. Sec. 7135(b), this authority remains in effect, as we have seen in the prior discussion, unless it has been "superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter"[4] (emphasis added). Thus, for appellants to prevail, they must identify a "specific provision[ ]" of the CSRA that supersedes E.O. 11,491.[5]
 
 
 8
 * In their survey of the statutory landscape, appellants argue that 5 U.S.C. Sec. 7105(a)(1) fits this bill. That provision, as we have observed, mandates that "[t]he Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter" (emphasis added). Appellants maintain that this language confers upon the FLRA exclusive control of policy guidance with respect to federal labor-management relations, so that the Authority occupies the field entirely, as it were, to the exclusion of OPM.
 
 
 9
 The problem with this argument is that Sec. 7105(a)(1) does not explicitly state that only the FLRA shall engage in such guidance. To the contrary, the requirement that the FLRA "shall provide leadership" implies that other entities may be involved in providing policy guidance. In a word, the statutory language itself does not connote exclusivity, and does not, on its face, appear to satisfy the express statutory requirement of a specific superseding provision.
 
 
 10
 Appellants do not, however, ground their position on the statutory language alone. They repair, rather, to the legislative history and contend that a careful examination of the structure and purpose of the CSRA, in light of the Act's history, leads inexorably to the conclusion that the FLRA was given exclusive dominion over policy guidance in federal labor-management relations. In support of this argument, appellants rely heavily upon the history of the key provision in this case, Sec. 7105(a)(1). The unions emphasize that when the CSRA was first presented to Congress in 1978, the Administration proposed, and the Senate adopted, a provision with respect to the FLRA's power which did not charge the FLRA with a policy guidance role.[6] In its report on this section, the Senate Committee on Governmental Affairs stated:
 
 
 11
 [T]he Authority's powers and duties are to prescribe and interpret this subchapter, decide major policy issues, prescribe regulations needed to administer its functions, and disseminate information relating to its operations. Similar powers and duties are assigned to the Federal Labor Relations Council under Executive Order 11491. Under this provision, the Authority will not advise or issue policy guidance to agencies, which role will rest with the Office of Personnel Management. Likewise, the Authority is not authorized to advise the President other than the normal role of agencies to suggest necessary and desired changes in legislation. Also, the Authority, like the Council, will not issue advisory opinions.
 
 
 12
 S.REP. NO. 969, 95th Cong., 2d Sess. 99-100 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2821-22 (emphasis added), reprinted in LEGISLATIVE HISTORY, supra note 6, at 740, 759-60.
 
 
 13
 In contrast to the Senate-passed bill, the House passed a different version, which vested the FLRA with a leadership role in federal labor-management relations policy. H.R. 11,280, 95th Cong., 2d Sess. Sec. 7105(a), 124 CONG.REC. 29,221, 29,245, reprinted in LEGISLATIVE HISTORY, supra note 6, at 970. The House Report on this section, in what appellants deem a critical omission, made no mention of a policy guidance role for OPM. See H.R.REP. NO. 1403, 95th Cong., 2d Sess. 42, reprinted in LEGISLATIVE HISTORY, supra note 6, at 675, 688. The House version was eventually passed by the entire Congress and became what is now Sec. 7105(a)(1). From this sequence, appellants maintain that Congress' embracing the House version, as opposed to the Senate version, demonstrates that Congress rejected any policy guidance role for OPM.
 
 
 14
 Going beyond the specific development of the statute as ultimately enacted, appellants argue that Congress' rejection of a policy guidance and advisory role for OPM becomes manifest when the CSRA is viewed as a whole. In their view, "[t]he Civil Service Reform Act is so comprehensive a treatment of the personnel functions to be performed by the various newly created agencies, and so complete a description of the labor-management program established therein, that it is incomprehensible how it could be read to leave any matter to be governed by the terms of the superceded executive order." Federal/Postal/Retiree ("F/P/R") Coalition Brief at 19. Specifically, appellants emphasize that OPM's duties and responsibilities are enumerated in Title II of the CSRA, codified as Part II, of the 1978 landmark legislation. FLRA's duties are set forth not in Title II but, as we have seen, in an entirely different part of the statute, namely Title VII, codified in Part III, Subpart F. Title VII, which governs labor-management relations, is silent with respect to OPM, save for the solitary provision authorizing the FLRA to request advisory opinions from the Director of OPM. From this, appellants argue that when OPM is in fact granted authority to issue regulations or implement certain personnel-related functions, that authority is specifically stated in the statute,[7] thus making the omission of any grant of authority to OPM in Title VII highly significant in divining Congress' intent. Furthermore, appellants contend that whenever interplay between agencies was contemplated by Congress in its overhauling of the civil service laws, the precise roles of those agencies were delineated in the CSRA,[8] but critically, in appellants' view, no such provision for interplay exists between OPM and the FLRA (except, again, for the FLRA's power to solicit advisory opinions from OPM).
 
 
 15
 This line of reasoning leads appellants to the conclusion that "[i]f the language and history of the Act, and of the labor management Statute which it contains, demonstrate anything, it is that Congress intended to pass a comprehensive measure, and that the compromises and concessions as to the nature of the labor management program were incorporated in that measure." F/P/R Coalition Brief at 19.[9]
 
 2
 
 16
 These arguments suffer from two major flaws. First, it is highly doubtful that a combination of implications of and inferences from the legislative history, coupled with the structure of the CSRA, could add up to the "specific provisions" of law expressly required under Sec. 7135(b) to supersede the Executive Order's regime. While expressions of congressional intent are obviously germane in determining the authority which agencies enjoy under a statute, Congress has clearly provided that in determining whether OPM's authority under the Executive Order has been circumscribed, we are to look to the language of the CSRA. As we have seen, we find when we examine that language no provision which directly limits OPM's authority in this area.
 
 
 17
 Second, even if the statute's legislative history could supply a "specific provision" within the meaning of the CSRA, the legislative history, when viewed as a whole, fails to yield the conclusion that Congress intended OPM to have no role in advising agencies on labor-management relations. In our view, the history of Sec. 7105(a)(1), fairly viewed, does not reveal any "rejection" of such a role for OPM. By adopting the House version, Congress clearly rejected the proposition--embodied in the Senate bill--that the FLRA would have no policy guidance role. But to confer authority upon the FLRA to provide guidance and advice to Executive Branch agencies is one thing; it is quite another to conclude that Congress thereby meant to reject the Senate's contemplation that OPM would have a policy guidance role, especially since this "contemplation" was not written into the language of the Senate bill. It was, rather, only part of the Senate report. It simply goes too far to suggest that we should interpret the rejection of a particular section of a proposed bill so as to work a rejection of every concept in a legislative report on that section.
 
 
 18
 Moreover, having OPM and the FLRA act as co-occupants of this field is not, as appellants would have it, illogical or inconsistent. Quite to the contrary, if OPM were entirely deprived of a policy guidance role, a gap would exist as to policy advice being provided to federal agencies. Under its regulations, the FLRA will not, without exception, provide policy guidance to an agency which request it. Indeed, the Authority "ordinarily will not consider a request [for policy guidance] related to any matter pending before the Authority." 5 C.F.R. Sec. 2427.2(b). Plainly, it could be quite some time before a matter pending before the Authority is fully and finally resolved by that entity, and in the interim federal agencies would be left to their own devices, deprived of policy advice in such matters.
 
 
 19
 But more is at issue than a gap in the advice-giving function. At bottom, the FLRA is not designed to provide agencies with the same sort of guidance that OPM can appropriately furnish. The FLRA, after all, is an independent and bipartisan body, which represents neither labor nor management;[10] it carries on adjudicatory functions analogous to those discharged by the NLRB.[11] A neutral adjudicatory entity such as the FLRA is certainly able to and does provide advice, but it can scarcely remain neutral while wearing the quite different hat of a management consultant to the federal administrative agencies. If the Authority attempted to act, as it were, as a management consultant, the Authority would be stepping out of its role of a neutral third-party when acting in its adjudicatory capacity.[12]
 
 
 20
 Appellants claim, in effect, that under the CSRA the federal administrative agencies are not to have a management consultant in regard to labor-management relations--at least in the form of OPM--inasmuch as the Act "imposes responsibility for collective bargaining directly on federal agency heads, who are answerable only to the FLRA and courts for their decisions." NTEU Brief at 14. But OPM's issuance does not remove from agencies one whit of their authority--or their duty--to bargain or otherwise comply with the CSRA's strictures; to the contrary, the FPM issuance emphasizes "that agencies should fully recognize their obligation to bargain and should carefully, and in good faith, consider all serious proposals presented in negotiations." 48 Fed.Reg. 32,276 (1983).[13] Appellants demur on this point, contending that OPM enjoys such significant, practical control over agencies in personnel matters that agency heads would not dare stray from the path that OPM has laid out. But this does not alter the undisputed fact that OPM's advice is precisely that--advice--and will not tie the hands of agencies in carrying out their own statutorily imposed duties under the CSRA.[14]
 
 
 21
 The foregoing analysis demonstrates that the history and structure of the CSRA are not, as appellants would have it, of crystalline clarity in delimiting the respective roles of FLRA and OPM in the policy guidance area.[15] Without such clarity, we are unable to conclude that a "specific provision" exists in Title VII that supersedes OPM's continuing authority under E.O. 11,491.[16]
 
 
 22
 Affirmed.
 
 
 
 [1]
 The importance of the pre-1978 regime is illustrated by the Supreme Court's analysis and decision in BATF v. FLRA, --- U.S. ----, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983)
 
 
 [2]
 The notice also stated that "the issuance will constitute policy guidance" and was accordingly not subject to the notice and comment provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 553(b)(3) (1977). The District Court agreed with the agency's determination in this respect, as do we. Policy guidance, which the proposed issuance would be, is precisely that--guidance. It is not mandatory, regardless of its "persuasive authority" or, as appellants put it more colorfully at oral argument, its genesis in the halls of "Big Brother." As is usually the case, sloganeering is an inadequate substitute for analysis; we are simply unable to divine in what manner, assuming the power that persuasiveness may have, guidance, is, in law, transformed into a directive. We should also observe in this respect that NTEU, the appellant in No. 84-5057, does not on appeal advance the APA procedural arguments embraced by the appellants in No. 84-5040. But see NTEU Complaint p 12, NTEU J.A. at 10
 
 
 [3]
 The full language of section 25(a), as amended, reads:
 The Office of Personnel Management, in conjunction with the Office of Management and Budget, shall establish and maintain a program for the policy guidance of agencies on labor-management relations in the Federal service and periodically review the implementation of these policies. The Office of Personnel Management shall continuously review the operation of the Federal labor-management relations program to assist in assuring adherence to its provisions and merit system requirements; implement technical advice and information programs for the agencies; assist in the development of programs for training agency personnel and management officials in labor-management relations; and, from time to time, report to the Committee on the state of the program with any recommendation for its improvement.
 
 
 [4]
 The following is provided in 5 U.S.C. Sec. 7135(b):
 Policies, regulations, and procedures established under and decisions issued under Executive Orders 11491, 11616, 11636, 11787, and 11838, or under any other Executive order, as in effect on the effective date of this chapter, shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter.
 
 
 [5]
 It is not maintained that any regulation or decision has superseded the pertinent provision of E.O. 11,491, as amended
 
 
 [6]
 "The Authority shall administer and interpret the provisions of this chapter, decide major policy issues, prescribe regulations, and disseminate information appropriate to the needs of agencies, labor organizations, and the public." S. 2640, 95th Cong., 2d Sess. Sec. 7204(a), reprinted in SUBCOMM. ON POSTAL PERSONNEL AND MODERNIZATION OF THE HOUSE COMM. ON POST OFFICE AND CIVIL SERVICE, 96TH CONG., 1ST SESS., LEGISLATIVE HISTORY OF THE FEDERAL SERVICE LABOR-MANAGEMENT RELATIONS STATUTE, TITLE VII OF THE CIVIL SERVICE REFORM ACT OF 1978 at 550, 566 (Comm.Print 1979) [hereinafter cited as LEGISLATIVE HISTORY]
 
 
 [7]
 See, e.g., 5 U.S.C. Secs. 3302, 3304, 3132(b), 3134 (1982)
 
 
 [8]
 See, e.g., 5 U.S.C. Secs. 1103(a), 1205(e) (1982) (regarding the division of authority between OPM and the Merit Systems Protection Board as to regulations concerning merit principle and employee rights)
 
 
 [9]
 Appellants also point to several post-enactment events as support for their interpretation. OPM's March 30, 1983, Federal Register Notice resulted in comments from the House Post Office and Civil Service Committee. The Committee furnished a position paper to OPM, in which the Committee expressed its view that "OPM has no authority to issue policy guidance to the agencies on management rights, consultation, or the scope of bargaining in labor-management relations." Comments of the Committee on Post Office and Civil Service on the Regulatory and Other Materials Proposed by the Office of Personnel Management in the Federal Register, F/P/R Coalition J.A. 104, 116. The Committee's arguments as to why it felt OPM lacked such authority are similar to those made by appellants in this case. In addition, the Committee Chairman, Rep. William D. Ford, a principal author of Title VII, stated on April 21, 1983, that Congress did not give OPM the power to issue policy guidance to Federal agencies on labor-management relations. Affidavit of Mary E. Jacksteit, F/P/R Coalition J.A. 100, 101. Finally, on Nov. 14, 1983, Congress passed H.J.Res. 413, which, inter alia, appeared to prohibit OPM from implementing its policy guidelines in fiscal year 1984. Further Continuing Appropriations for Fiscal Year 1984, Pub.L. No. 98-151, Secs. 101(f), 140, 97 Stat. 964, 973, 982 (1983)
 These subsequent legislative actions do not demonstrate that Congress, when it passed the CSRA, intended that only the FLRA engage in policy guidance. As a general rule, subsequent statements by members of Congress do not constitute reliable evidence as to what Congress intended in the past. Moreover, it may be that other members of Congress would disagree with the House Post Office and Civil Service Committee. We do not and cannot know. The Committee comments were not attached to any legislation requiring the approval of the entire House. Only subsequent legislative actions that clearly demonstrate congressional intent, such as a long period of acquiescence in a practice of which Congress was aware, see Bob Jones University v. United States, 461 U.S. 574, 597 - 601, 103 S.Ct. 2017, 2032-33, 76 L.Ed.2d 157 (1983), or subsequent legislation declaring the intent of earlier legislation, see Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801-02, 23 L.Ed.2d 371 (1969), properly guides a court's statutory interpretation. A longstanding interpretation placed on the CSRA by the FLRA would have great weight, see NLRB v. Bell Aerospace Co., 416 U.S. 267, 274-75, 94 S.Ct. 1757, 1761-62, 40 L.Ed.2d 134 (1974), but it appears that the FLRA has not addressed the question whether it has an exclusive role in policy guidance. The wisest course in this case is for us to rely upon the language of the CSRA and, secondarily, its accompanying legislative history.
 
 
 [10]
 "[T]he [Civil Service] Reform Act replaced the Federal Labor Relations Council, which had been criticized as 'defective' because its members 'come exclusively from the ranks of management,' with an independent and bipartisan FLRA." Dep't of Defense v. FLRA, 659 F.2d 1140, 1145 (D.C.Cir.1981) (footnote omitted)
 
 
 [11]
 As the Supreme Court stated in BATF v. FLRA, --- U.S. ----, 104 S.Ct. 439, 442, 78 L.Ed.2d 195 (1983), the Authority's role "is analogous to that of the National Labor Relations Board in the private sector."
 
 
 [12]
 In fact, much of the impetus for establishing the FLRA was to provide a neutral adjudicatory body independent of the influences of management reflected in the composition of the old Federal Labor Relations Council. See supra note 10. We note in this respect, however, that the District Court was not entirely correct in stating that "FLRA's role is that of an adjudicator while OPM's role is that of an advisor." Memorandum Opinion at 14, reprinted in NTEU J.A. at 82, 95. It is clearly contemplated by Sec. 7105(a)(1) that FLRA will have a role, indeed a leadership role, in providing policy guidance. See BATF v. FLRA, --- U.S. ----, 104 S.Ct. 439, 442, 78 L.Ed.2d 195 (1983) ("In addition to its adjudicatory functions, the Authority may engage in formal rulemaking, Sec. 7134, and is specifically required to 'provide leadership in establishing policies and guidance relating to matters' arising under the Act, Sec. 7105(a)(1).")
 
 
 [13]
 Appellants vigorously complain that OPM has stepped out of bounds in another respect by virtue of the contents of the proposed issuance. While acknowledging OPM's authority to publish, say, an informational brochure for federal managers setting forth in neutral fashion the terms of the statute, appellants contend that the proposed issuance constitutes an assault on important areas clearly within FLRA's cognizance. For example, appellants point to the admonition in the notice that matters held negotiable by the FLRA but which are under judicial challenge should not be deemed subjects of collective bargaining by the agencies. NTEU Brief at 19. The F/P/R Coalition points to a number of other matters in which, in their view, OPM's admonitions fly in the teeth of FLRA's decisions to the contrary. F/P/R Coalition Brief at 29-37. The upshot of all this, appellants argue, is that OPM is seeking to subvert the FLRA's authority
 The answer to this contention does not lie in a case-by-case comparison of each cited instance of an asserted FLRA-OPM conflict. That is far beyond the scope of matters appropriately within the bounds of this litigation. Rather, the answer lies in the nature of OPM's action; it is, on its face and as the District Court found, advisory in nature. It is not a mandate or a directive to agencies to do anything, much less an order for them to disobey the law. And even as to the matters which appellants find so destructive of the FLRA's authority, namely the recommendation that agencies refuse to obey challenged actions of the FLRA while those matters are on appeal, appellants have pointed to nothing that renders such advice unlawful. Whether the advice is seemly or promotive of respect for the FLRA are not questions which the courts are positioned to adjudge, unless Congress directs us to do so. We do not sit to referee squabbles over assertedly competing advice and guidance, even advice and guidance that may appear contradictory; we simply carry out our more limited function of determining whether OPM has legal authority to render such advice and guidance, regardless of the wisdom or correctness of that advice.
 
 
 [14]
 Patrick S. Korten, Assistant Director for Policy and Communications of OPM, averred that the issuance was "precatory and will not bind Federal agencies in the manner of a regulation." Affidavit of Patrick S. Korten, NTEU J.A. 46, 47
 
 
 [15]
 To be sure, courts should not indulge in rigidly literal interpretation of statutes at the expense of achieving that which Congress plainly sought to effectuate. Cf. Johnson v. United States, 163 Fed. 30, 32 (1st Cir.1908) ("[I]t is not an adequate discharge of duty for courts to say [to the Legislature]: We see what you are driving at, but you have not said it, and therefore we shall go on as before."). But it simply is not, as appellants would have it, plain that Congress was seeking to sweep OPM entirely off the field in providing advice in this area to the administrative agencies
 
 
 [16]
 Appellants in No. 84-5040 also argue that OPM's action runs afoul of separation of powers principles. In their view, OPM poached on the territory of two Article I entities, namely the Library of Congress and the Government Printing Office, inasmuch as those two entities are deemed "agencies" under the statute. F/P/R Coalition Brief at 44-46. We find this argument unavailing in that OPM is simply providing guidance to the two agencies