**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2782, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 85–1562.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1986.

Decided Oct. 21, 1986.

---

33 U.S.C. § 908(f) (1970).

738

Philip R. Kete, Takoma Park, Md., for petitioner.

Robert J. Englehart, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., with William E. Persina, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before EDWARDS, GINSBURG and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case makes its third visit to our court. *See AFGE, Local 2782 v. FLRA,* No. 84–1289 (D.C.Cir. Sept. 19, 1984); *AFGE, Local 2782 v. FLRA,* 702 F.2d 1183 (D.C.Cir.1983). The issue now before us is whether the Federal Labor Relations Authority ("FLRA") correctly concluded that a provision of the Federal Personnel Man-

ual, promulgated by the Office of Personnel Management, constituted a "government-wide rule or regulation" that conflicted with a bargaining proposal advanced by the Union. We conclude that the Authority properly interpreted the pertinent provisions of the OPM Manual and therefore deny the petition for review.

I

In 1981, American Federation of Government Employees, Local 2782 ("AFGE" or "Union"), the authorized representative of certain employees of the Bureau of the Census, Department of Commerce, sought to bargain over a proposal to provide repromotion rights to employees demoted through no fault of their own. Specifically, AFGE's proposal stated:

Notwithstanding any other provision of this article, a repromotion eligible (i.e., an employee demoted through no fault of his or her own) will be selected for the first available vacancy for which he or she fully meets the qualification standards and which the agency determines to fill.

Petitioner's Brief at 3. The Census Bureau refused to bargain over the proposal, contending that the duty to bargain mandated by the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.* (1982 and Supp. III 1985), did not encompass a proposal which intruded into management's right to promote.

Confronted by the agency's refusal, AFGE repaired to the FLRA to seek a bargaining order, *see id.* § 7117(c)(1), but met with no success. *AFGE, AFL–CIO, Local 2782 and Department of Commerce, Bureau of the Census,* 7 F.L.R.A. 91 (1983). The Authority grounded its decision upholding the agency's position on section 7106(a)(2)(C) of the statute. That provision requires management to retain discretion "to make selections for appointments from—(i) Among properly ranked and certified candidates for promotion; or (ii) any other appropriate source." 5 U.S.C. § 7106 (1982). In the FLRA's view, AFGE's proposal would, if adopted, affect

the authority of management officials to select from "any other appropriate source," because it would require, in certain cases, that selections for promotions be made only from among "repromotion eligibles" (those employees, again, demoted through no fault of their own). AFGE unsuccessfully urged before the Authority that its proposed requirement constituted an "appropriate arrangement" under subsection (b)(3) of section 7106, which provides that "nothing in this section shall preclude any agency and any labor organization from negotiating ... appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials." 5 U.S.C. § 7106 (1982). The FLRA determined, however, that subsection (b)(3) was inapplicable; as the Authority saw it, a proposal directly interfering with the exercise of management's rights under 7106(a)(2)(C) to choose among candidates from "appropriate sources" in filling a vacancy could not constitute an "appropriate arrangement" within the meaning of subsection (b)(3). 7 F.L.R.A. at 93.

AFGE thereafter petitioned for review. This court vacated the FLRA's decision and remanded the case, holding that the Authority's reading drained all meaning from the "appropriate arrangements" clause of subsection (b)(3). 702 F.2d 1183.

On remand, the FLRA reversed course, determining that AFGE's proposal did indeed constitute an "appropriate arrangement" within the meaning of subsection (b)(3). In consequence, the Authority concluded, section 7106 of the statute presented no bar to the issuance of a bargaining order. *AFGE, AFL–CIO, Local 2782 and Department of Commerce, Bureau of the Census,* 14 F.L.R.A. 801 (1984). However, the Authority went on to determine that another provision of the statute, section 7117(a)(1), prohibited bargaining over AFGE's proposal. That section removes an agency's obligation to bargain with respect to proposals that are "inconsistent with any federal law or any government-wide rule or regulation." 5 U.S.C. § 7117(a)(1) (1982). Specifically, the FLRA concluded

that AFGE's proposal was inconsistent with the following provision from chapter 335 of the Federal Personnel Manual ("FPM"):

> Selection procedures will provide for management's right to select or not select from among a group of best qualified candidates. They will also provide for management's right to select from appropriate sources, such as reemployment priority lists, reinstatement, transfer, handicapped, or Veterans Readjustment eligibles or those within reach on an appropriate OPM certificate. In deciding which source or sources to use, agencies have an obligation to determine which is most likely to best meet the agency mission objectives, contribute fresh ideas and new viewpoints, and meet the agency's affirmative action goals.

FPM, § 1–4, Requirement 4, *reprinted in* J.A. at 12. Requiring management to retain the option of selecting either from a group of "best qualified candidates" or from "other appropriate sources," this provision of the FPM was thus deemed to conflict directly with AFGE's proposal, which would require management to select solely from a list of "repromotion eligibles."

AFGE again sought review, but this court dismissed the petition in view of the fact that a motion for reconsideration, filed by the Union, was pending before the Authority. *AGFE, Local 2782 v. FLRA,* No. 84–1289 (D.C.Cir. Sept. 19, 1984). Upon reconsideration, the FLRA adhered to its prior conclusion. This petition for review followed.

## II

AFGE's primary contention is that the applicable FPM provision, when properly interpreted, is not inconsistent with its bargaining proposal. The Union argues that while section 1–4 (quoted above) of chapter 335 may indeed conflict with its proposal, the following section, 1–5, specifically permits the type of arrangement that AFGE is

seeking at the bargaining table. Thus, AFGE argues, the pertinent FPM chapter, read as a whole, does not constitute an "inconsistent ... government-wide rule or regulation." *See* Petitioner's Brief at 12. We thus turn to the portion of the FPM relied upon by AFGE.

Section 1–5 of FPM chapter 335 states in relevant part:

> c. Agencies may at their discretion except other actions from their plans. These include, but are not limited to:
>
> * * * * * *
>
> (6) Repromotion to a grade or position from which an employee was demoted without personal cause and not at his or her request.

FPM, § 1–5, *reprinted in* J.A. at 13. AFGE claims that this provision carves out a possible exception to Requirement 4 of the preceding section (1–4), thus rendering the Union's proposal permissible under the FPM.

The FLRA, in contrast, interprets section 1–5 of chapter 335 differently. In the Authority's view, section 1–5(c) creates an ability to except "certain personnel actions from the competitive selection procedures of [agency] merit promotion plans." No. O–NG–352, slip op. at 3 n. 4 (F.L.R.A. July 11, 1985); *see* Respondent's Brief at 11–12. In the FLRA's view, the provision does not, however, override the specific mandate of section 1–4, and especially Requirement 4 of that section. Upon analysis, we are persuaded that the Authority's interpretation is the more natural one.[1]

It is a generally accepted precept of interpretation that statutes or regulations are to be read as a whole, with "each part or section ... construed in connection with every other part or section." 2A Sutherland, *Statutes and Statutory Construction* § 46.05, at 90 (C. Sands rev. 4th ed.

1984). To derive the proper interpretation of section 1–5(c)(6) of the FPM, we thus examine not only the totality of section 1–5 but chapter 335 as a whole.

Chapter 335 was promulgated in accordance with another regulation, 5 C.F.R. § 335.103 (1986). That provision requires agencies to adopt "a systematic means of selection for promotion according to merit" that "conform[s] with the standards and requirements of OPM." *Id.* Chapter 335, in turn, undertakes to set forth a comprehensive set of standards for merit promotion plans. The chapter begins with an introductory section, FPM, § 1–1, *reprinted in* J.A. at 11, then has separate sections on Definitions, Merit Promotion Plans, Merit Promotion Requirements, Covered Personnel Actions, and Grievances. The most significant sections for our inquiry are, of course, 1–4 (Merit Promotion Requirements) and 1–5 (Covered Personnel Actions).

Section 1–4 is divided into five separate "Requirements." It mandates that competitive, merit-based "procedures for promoting employees" be established, FPM, § 1–4, Requirement 1, *reprinted in* J.A. at 12, and sets out certain attributes that such procedures must possess. *See, e.g., id.,* Requirement 2 (consideration must be given to employees absent for legitimate reasons); *id.,* Requirement 5 (recordkeeping). Significantly for our purposes, Requirement 4 directs that agency promotion plans confer upon managers the right to select either from a group of "best qualified candidates"—that is, those qualifying for consideration by virtue of the competitive procedures that section 1–4 establishes—or from "other appropriate sources, such as reemployment priority lists."

Section 1–5 of the FPM, when read as a whole, relates to whether section 1–4's competitive selection procedures are to be

---

1. We reach this decision without according deference to the FLRA's reading of the Federal Personnel Manual. The Authority has suggested that its interpretation of the FPM is entitled to some middle level of deference: less than that to which it is entitled when interpreting its own statute or regulations, *see Bureau of Alcohol,*

*Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), but greater than no deference at all. We decline, at least in the posture of this case, to embrace this position, which appears to be a novel proposition of law.

applied to specific personnel actions. Subsection (a) of section 1–5 provides that "[c]ompetitive procedures in agency promotion plans" shall apply to certain specified actions, such as temporary promotions. Subsection (b), in contrast, provides that "competitive procedures do not apply" in certain enumerated situations. Subsection (c), in turn, provides that "[a]gencies may at their discretion except other actions from their plans," and lists seven such actions, including subsection (c)(6)—the provision relied upon by AFGE—dealing with repromotion. Taken together, these three subsections of section 1–5 establish a coherent regime for the application of competitive procedures: mandatory application of such procedures (subsection (a)), mandatory exceptions to such procedures (subsection (b)), and optional exceptions to such procedures (subsection (c)).

Thus, the structure of section 1–5 suggests that subsection (c) is properly construed not as creating possible instances in which management may forfeit the right under Requirement 4 of section 1–4 to choose from the list of "best qualified candidates" or from "other appropriate sources," but as establishing a specific list of personnel actions to which the competitive procedures of section 1–4 need not apply. This reading comports both with the remainder of section 1–5, and more importantly, with section 1–4. By providing that competitive procedures need not apply to repromotions, subsection (c)(6) of section 1–5 states, in effect, that an agency may provide that repromotion eligibles do not have to be on the list of "best qualified candidates" for promotion in order to be promoted. This is in accord with the direction in Requirement 4 of section 1–4 that management retain the right to select from "other appropriate sources"—which could include a list of repromotion eligibles—as well as the group of "best qualified candidates."

Read in this way, chapter 335 constitutes a coherent, consistent regulation. Accepting AFGE's reading would, in contrast, create tension within the chapter. Such a construction, it goes without saying, is not

favored, 2A Sutherland, *Statutes and Statutory Construction* §§ 46.05, 46.06 (C. Sands rev. 4th ed. 1984), particularly when another reading obviates any conflict that would otherwise be created. Accordingly, we interpret subsection (c)(6) of section 1–5 as relating only to the application of competitive procedures to personnel actions, not as limiting the right under Requirement 4 of section 1–4. So construed, both sections 1–4 and 1–5 of chapter 335 essentially provide that repromotion eligibles may be selected without being on the list of "best qualified candidates" created as a result of competitive promotion procedures. Thus, the FPM would clearly *permit* management to select a "repromotion eligible" for promotion. It just as clearly, however, requires that management not be *obligated* to do so, as would be the case under AFGE's proposal. In consequence, the FPM, on the one hand, and AFGE's bargaining proposal, on the other, are inconsistent, as the FLRA rightly concluded.

### III

As a fallback, AFGE argues that the relevant provisions of the FPM do not constitute binding government-wide rules or regulations. *See* Petitioner's Brief at 13. We disagree. The portion of the FPM at issue was promulgated pursuant to a specific federal regulation. That regulation, presently codified in 5 C.F.R. § 335.103 (1986), requires each agency to adopt a "program designed to insure a systematic means of selection for promotion according to merit" and directs that "the promotion program shall conform with the standards and requirements of OPM." Chapter 335 of the FPM is unquestionably the product of this directive; the regulation's effective date was expressly tied to chapter 335's promulgation. *See id.* effective date; *see also National Treasury Employees Union and Department of the Treasury, U.S. Customs Service,* 11 F.L.R.A. 247 (1983) (holding section 1–4 to constitute a

government-wide rule or regulation under 5 U.S.C. § 7117(a)(1)).[2]

AFGE also maintains that the FLRA should have sought OPM's interpretation of the relevant FPM provisions instead of rendering its own construction of the Manual without the benefit of OPM's views. *See* 5 U.S.C. § 7105(i) (1982).[3] However, AFGE did not request or suggest to the Authority that this matter warranted consultation with OPM. The question of the appropriateness of FLRA's failure to exercise its authority under section 7105(i) was thus never raised before the Authority itself and is not before us. *See Equal Employment Opportunity Commission v. FLRA,* —— U.S. ——, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986) (per curiam) (applying 5 U.S.C. § 7123(c) and refusing to consider arguments not made before the FLRA). We leave to another day the anomalous situation which would be created by an OPM regulation, as interpreted by the Au-

thority without resort to OPM, having the effect of limiting the scope of proposals subject to collective bargaining, where the proposal concerns a subject matter that Congress clearly intended to be "appropriate" for bargaining. *See* 5 U.S.C. § 7106 (1982); *cf. id.* § 7117(a)(1) (providing that where a conflict exists, the government-wide regulation is to prevail).

We are satisfied that none of the grounds asserted by AFGE warrant overturning the Authority's decision. Accordingly, the petition for review is

*Denied.*

---

**2.** Petitioner seeks comfort from our decision in *Federal/Postal/Retiree Coalition v. Devine,* 751 F.2d 1424 (D.C.Cir.1985). In *Devine,* we held, in a completely different context, that a portion of the FPM containing policy guidance on labor-management relations did not "remove from agencies one whit of their authority—or their duty—to bargain." *Id.* at 1430. But in *Devine,* we dealt with a section of the FPM that was admittedly advisory in nature. We did not hold that the entire FPM was merely non-binding policy guidance. A document comprehensive in scope, the FPM obviously partakes of the nature of both policy guidance and binding regulation.

In view of 5 C.F.R. 335.103, there can be little doubt that section 1–4 of chapter 335 qualifies as the latter, not the former.

**3.** 5 U.S.C. § 7105(i) (1982) provides:

In the exercise of the functions of the Authority under this title, the Authority may request from the Director of the Office of Personnel Management an advisory opinion concerning the proper interpretation of rules, regulations, or policy directives issued by the Office of Personnel Management in connection with any matter before the Authority.