NATIONAL LABOR RELATIONS
BOARD UNION, et al.,
Petitioners,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 86–1624.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 5, 1987.

Decided Dec. 4, 1987.

As Amended Dec. 4, 1987.

---

Phillip R. Kete, Takoma, Md. was on the brief for petitioners.

Robert J. Englehart, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and William E. Persina, Deputy Sol., Federal Labor Relations Authority, Washington, D.C. were on the brief for respondent. Jill A. Griffin, Washington, D.C. also entered an appearance for respondent.

Before EDWARDS, STARR and D.H. GINSBURG, Circuit Judges.

Concurring opinion filed by Circuit Judges STARR and D.H. GINSBURG.

HARRY T. EDWARDS, Circuit Judge:

In July 1985, the National Labor Relations Board Union (the "Union") petitioned the Federal Labor Relations Authority (the "FLRA") to amend 5 C.F.R. §§ 2423.5 and 2424.5 (1987).[1] The Union claimed that these regulations were inconsistent with 5 U.S.C. §§ 7117(c) and 7118 (1982), because they preclude labor organizations from obtaining unfair labor practice ("ulp") remedies when an agency violates its duty to bargain. Under the regulations, when an agency in good faith refuses to bargain over a union proposal on the ground that

---

1. The Union was joined, both below and on appeal, by Local 12 of the American Federation of Government Employees, AFL–CIO. For ease of reference, this opinion shall only mention the first of these petitioners.

its implementation would trammel the agency's statutorily protected management rights or conflict with a federal law or Government-wide rule or regulation, no ulp remedies are available to the union unless the agency's refusal was accompanied by an actual or threatened unilateral change in conditions of employment. The FLRA denied the Union's petition, and the Union appealed.

Because we find that the text and legislative history of 5 U.S.C. §§ 7117(c) and 7118 do not support the Union's claim, and because the regulations are consistent with practices followed under Executive Order 11491 (prior to the passage of the Federal Service Labor–Management Relations Statute), we conclude that the FLRA's interpretation of the statutory language from which the regulations derive is permissible. We therefore deny the Union's petition for review.

## I. BACKGROUND

The Federal Service Labor–Management Relations Statute (the "Statute"), 5 U.S.C. §§ 7101–7135 (1982), imposes on federal agencies a duty to bargain in good faith with the exclusive representative of an appropriate bargaining unit about employees' conditions of employment. 5 U.S.C. §§ 7103(a)(12), 7114(b)(2). However, the duty to bargain does not extend to proposals whose implementation would trench upon the agency's reserved management rights, 5 U.S.C. § 7106; or to proposals that are inconsistent with federal law or a Government-wide rule or regulation, 5 U.S.C. § 7117(a)(2); or to proposals that contravene a rule or regulation for which there exists a compelling need, 5 U.S.C. § 7117(a)(3), (b). If an agency refuses to negotiate over a union proposal on the ground that its adoption would impair the agency's statutorily protected management rights or conflict with federal law or a Government-wide rule or regulation, then the labor organization may appeal to the

FLRA for an "expedited" determination of negotiability. 5 U.S.C. § 7117(c).[2] If the FLRA accepts the Union's claim of negotiability, then the agency must bargain over the proposal.

The FLRA's regulations implementing the statutory negotiability appeals procedure contain the following provision:

Where a labor organization files an unfair labor practice charge pursuant to Part 2423 of this subchapter which involves a negotiability issue, and the labor organization also files pursuant to this part a petition for review of the same negotiability issue, the Authority and the General Counsel ordinarily will not process the unfair labor practice charge and the petition for review simultaneously. Under such circumstances, the labor organization must select under which procedure to proceed. Upon selection of one procedure, further action under the other procedure will ordinarily be suspended. Such selection must be made regardless of whether the unfair labor practice charge or the petition for review of a negotiability issue is filed first. Notification of this selection must be made in writing at the time that both procedures have been invoked, and must be served on the Authority, the appropriate Regional Director and all parties to both the unfair labor practice case and the negotiability case. *Cases which solely involve an agency's allegation that the duty to bargain in good faith does not extend to the matter proposed to be bargained and which do not involve actual or contemplated changes in conditions of employment may only be filed under this part.*

5 C.F.R. § 2424.5 (emphasis added).[3] A substantially identical passage appears in Part 2423 of the FLRA's regulations, which sets out the procedures for ulp proceedings. *See* 5 C.F.R. § 2423.5.

---

2. The Statute specifies a separate procedure by which a labor organization may appeal an agency's allegation that there exists a "compelling need" for a rule or regulation that is not

Government-wide. *See* 5 U.S.C. § 7117(a)(3), (b).

3. The italicized sentence is the portion of the regulation here at issue.

In July 1985, the Union petitioned the FLRA to amend these two parallel regulations. The Union claimed that the final sentences of the regulations were inconsistent with the Statute, because they precluded the FLRA from granting ulp remedies to a labor organization in cases where an agency in good faith, but mistakenly, refused to bargain over a proposal because it thought the proposal nonnegotiable. *See* Petition for Amendment of Rules, *reprinted in* Record Appendix ("R.A.") 5, 10–13. The Union considered the unavailability of ulp remedies in these circumstances a significant deprivation of employee rights under the Statute. First, the Union claimed that even a good-faith refusal to negotiate is an unfair labor practice. Second, the Union pointed out that the Statute empowers the FLRA, if it determines that an unfair labor practice has been committed, not merely to order the parties to bargain over a contested proposal, but also to renegotiate any agreement the parties may have reached and to include in that agreement certain provisions with retroactive effect. 5 U.S.C. § 7118(a)(7)(B). Although the FLRA in its discretion might rarely grant such relief in response to an agency's erroneous but good-faith allegation of non-negotiability, the Statute does not rule out such a remedy, the Union contended, and the FLRA's regulations therefore ought to permit, if not require, the imposition of contract terms with retroactive effect when an agency declines to discuss what the FLRA later ascertains to be a negotiable proposal.

Accordingly, the Union requested the FLRA to delete 5 C.F.R. §§ 2423.5 and 2424.5 and to substitute the following proposed regulation:

(a) If a union files an unfair labor practice charge over an agency's failure to bargain over a matter, and the union has already filed an appeal of the agency's allegation that the duty to bargain does not extend to that matter, a complaint shall be issued and the agency required to answer, but further proceedings concerning the unfair labor practice charge will be suspended pending decision on the duty to bargain issue.

(b) If during the investigation of a charge that an agency has failed to bargain in good faith the agency alleges as a defence that the duty to bargain in good faith does not extend to the matter sought to be bargained, the agency will be instructed to submit its allegation in writing to the union. If the union files a timely appeal of the allegation, a complaint on the unfair labor practice charge will be issued and an answer required, but further proceedings concerning the unfair labor practice charge will be suspended pending decision on the duty to bargain issue.

(c) If at any time after issuance of the complaint the agency alleges as a defence that the duty to bargain in good faith does not extend to the matter sought to be bargained, the agency will be instructed to submit its allegation in writing to the union. If the union files a timely appeal of the allegation, further proceedings concerning the unfair labor practice charge will be suspended pending decision on the duty to bargain issue.

(d) Upon issuance of the Authority's decision on the duty to bargain issue, the proceedings on the unfair labor practice case will be resumed in a manner consistent with that decision.

Petition for Amendment of Rules, R.A. 8.

On September 23, 1986, the FLRA denied the Union's petition, finding its proposed revision "contrary to the language and legislative history of the Statute as well as Authority precedent." Decision on Petition for Amendment of Rules, 23 F.L.R.A. No. 57 (Sept. 23, 1986), *reprinted in* R.A. 1. The Union appealed from the FLRA's decision pursuant to 5 U.S.C. § 7123(a). Rather than ask this court to substitute its original proposal for 5 C.F.R. §§ 2423.5 and 2424.5 *in toto*, however, the Union now requests that we order the FLRA to delete the final sentence of each of those regulations.

## II. ANALYSIS

### A. *Jurisdictional Issues*

The FLRA contends that this court lacks jurisdiction to hear the Union's appeal for

two reasons. First, it argues that its denial of the Union's petition does not constitute a "final order" for purposes of 5 U.S.C. § 7123(a) and, thus, is not appealable. Second, the FLRA avers that the Union's appeal must be dismissed because the agency action for which it petitioned differs from the relief the Union now requests on appeal. We reject these contentions. The Union's appeal in this case principally concerns a challenge to the *statutory authority* of the FLRA to promulgate the disputed regulations. As such, the Union's appeal is not untimely, nor does it involve a changed position from the one advanced before the FLRA.

### 1. *The Timeliness of the Union's Appeal*

Final orders of the FLRA must be appealed within sixty days. 5 U.S.C. § 7123(a). The FLRA's promulgation of final rules or regulations constitutes a final order marking the commencement of the sixty-day limitations period. *See AFGE v. FLRA,* 750 F.2d 143, 144 (D.C.Cir.1984). The regulations the Union seeks to amend were issued in final form on January 17, 1980. 45 Fed.Reg. 3482, 3506–07, 3512 (1980). The FLRA argues that, while it was obliged to respond to the Union's petition, *see* 5 U.S.C. §§ 553(e), 7134 (1982), its response is not an appealable final order under 5 U.S.C. § 7123(a). Because the Union's appeal appears to be an attack on regulations adopted almost seven years before that appeal was filed, the FLRA submits that judicial review should be barred by the sixty-day statute of limitations.

The FLRA's contention ignores the settled law of this circuit. In a long line of cases stretching back to *Functional Mu-*

sic, *Inc. v. FCC,* 274 F.2d 543 (D.C.Cir. 1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959), this court has repeatedly distinguished indirect attacks on the substantive validity of regulations initiated more than sixty days after their promulgation from like attacks on their procedural lineage. It has also noted that the scope of appellate review varies with the nature of the substantive attack. To avoid further confusion on this score, we offer a brief summary of prior holdings.

An agency's regulations may be attacked in two ways once the statutory limitations period has expired. First, a party who possesses standing may challenge regulations directly on the ground that the issuing agency acted in excess of its statutory authority in promulgating them. A challenge of this sort might be raised, for example, by way of defense in an enforcement proceeding.[4] Thus, suppose that the FLRA adopted a regulation prohibiting unions from representing women; suppose, further, that the regulation went unchallenged during the statutory limitations period; finally, suppose that the General Counsel filed ulp charges against a union for failure to execute a negotiated collective bargaining agreement[5] because the employer refused to extend coverage of the agreement to female employees. Under such circumstances, the union could clearly challenge the validity of the regulation on which the employer and the FLRA were relying, even if that regulation went uncontested throughout the applicable statutory limitations period. As this court said in *Functional Music:*

> As applied to rules and regulations, the statutory time limit restricting judicial review of [agency] action is applicable

---

4. *See, e.g., Geller v. FCC,* 610 F.2d 973, 978 (D.C.Cir.1979) ("Had the Commission applied one or more of the 1972 regulations [which were not attacked during the statutory limitations period] to the detriment of some individual, he would clearly have been in a position to complain of the order doing so."); *see also RCA Global Communications, Inc. v. FCC,* 758 F.2d 722, 730 (D.C.Cir.1985) ("Although statutory time limitations on judicial review of agency action are jurisdictional, self-evidently the calendar does not run until the agency has decided a question in a manner that reasonably puts

aggrieved parties on notice of the rule's content.") (citation omitted); *cf. Eagle–Picher Indus., Inc. v. EPA,* 759 F.2d 905, 909–19 (D.C.Cir. 1985) (outlining when judicial review of agency rule will be allowed outside a limitations period because challenge not ripe within limitations period).

5. *See, e.g., National Council of Social Security Admin. Field Operations Locals,* 21 F.L.R.A. No. 43 (1986).

only to cut off review directly from the order promulgating a rule. It does not foreclose subsequent examination of a rule where properly brought before this court for review of further [agency] action applying it. For unlike ordinary adjudicative orders, administrative rules and regulations are capable of continuing application; limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.

274 F.2d at 546.[6]

The second method of obtaining judicial review of agency regulations once the limitations period has run is to petition the agency for amendment or rescission of the regulations and then to appeal the agency's decision. We have distinguished three types of challenges on appeal.

(a) A petitioner's contention that a regulation suffers from some *procedural* infirmity, such as an agency's unjustified refusal to allow affected parties to comment on a rule before issuing it in final form, will not be heard outside of the statutory limitations period. This court held in *Natural Resources Defense Council v. NRC*, 666 F.2d 595 (D.C.Cir.1981), that "[w]ith respect to routine procedural challenges made by those against whom the agency is not proceeding to enforce the regulation," *id.* at 603, "[t]he 60 day period for seeking judicial review ... is jurisdictional in nature and may not be enlarged or altered by the courts." *Id.* at 602. Countenancing such challenges, the court reasoned, would on balance waste administrative resources and unjustifiably impair the reliance interests of those who conformed their conduct to the contested regulation. Hence, the court dismissed as untimely NRDC's procedural objection to the Commission's decision to promulgate final rules without a notice-and-comment period.

(b) A petitioner's claim that a regulation suffers from some *substantive* deficiency

*other than the agency's lack of statutory authority* to issue that regulation may be brought by petitioning the agency for amendment or rescission and then appealing the denial of that petition. For example, in *Gage v. Atomic Energy Commission*, 479 F.2d 1214 (D.C.Cir 1973), this court first noted that "petitioners retain the right to initiate rulemaking before the AEC by formally proposing the promulgation of the expanded rules they desire," and then said in a footnote:

Petitioners do have the right to petition the Commission for institution of a rulemaking proceeding under 10 C.F.R. §§ 2.802 and 2.803.... Denial of such a petition would constitute a final order reviewable by this court.

479 F.2d at 1222 & n. 27. An appellate court's review in cases of this kind, however, is limited to the *"narrow issues as defined by the denial of the petition for rulemaking,"* and does not extend to a challenge of the agency's original action in promulgating the disputed rule. *Professional Drivers Council v. Bureau of Motor Carrier Safety*, 706 F.2d 1216, 1217 n. 2 (D.C.Cir.1983) (emphasis added); *see also Natural Resources Defense Council v. EPA*, 824 F.2d 1146, 1150 (D.C.Cir.1987) (en banc). Furthermore, review of an agency's decision not to promulgate a rule proposed by the petitioner is extremely limited. *See WWHT, Inc. v. FCC*, 656 F.2d 807, 816–20 (D.C.Cir.1981).

(c) Finally, a petitioner's contention that a regulation should be amended or rescinded because it *conflicts with the statute* from which its authority derives is reviewable outside of a statutory limitations period. *See Natural Resources Defense Council v. NRC*, 666 F.2d at 603–04. Judicial review of this sort is often said to proceed—somewhat misleadingly—under the "arbitrary and capricious" standard, *see, e.g., id.* at 603, but challenges to an agency's statutory authority to issue a given regulation are assessed in a different manner than other allegations of "arbi-

---

**6.** Although *Functional Music* itself involved an appeal from an agency's refusal to reconsider its denial of a petition for rescission of the disputed regulations, rather than a direct assault on those regulations, its rationale for entertaining the petitioner's challenge is equally applicable to defensive attacks in enforcement proceedings.

trary and capricious" agency action once the limitations period has lapsed. We describe the proper approach to such cases in Part II.B. *infra.*

[2] The Union's charge that 5 C.F.R. §§ 2423.5 and 2424.5 are inconsistent with the Statute falls under this third category of indirect challenges, and thus warrants judicial consideration. The FLRA is mistaken in suggesting that this court can and should only consider this alleged inconsistency if an exclusive representative successfully appeals an agency's allegation of non-negotiability to the FLRA, if that representative also requests ulp relief, if the General Counsel then denies that request, and if the exclusive representative subsequently seeks judicial review. *See* Brief for the FLRA at 17 n. 7. Judicial scrutiny of the contested regulations is unavailable via this route, because the General Counsel's decision not to issue an unfair labor practice complaint is not a final order and hence is unreviewable. *Turgeon v. FLRA,* 677 F.2d 937 (D.C.Cir.1982).[7] The Union has availed itself of the only remaining path to judicial consideration of the substantive validity of the FLRA's regulations; in the absence of a contrary congressional directive, we are not prepared to foreclose access to this court under these circumstances.

### 2. *The Alleged Novelty of the Union's Request on Appeal*

■ In its petition for amendment, the Union requested the FLRA to substitute its four-paragraph proposal for 5 C.F.R. §§ 2423.5 and 2424.5. On appeal, it merely asks this court to order the deletion of the final sentence of both regulations. The FLRA contends that the Union's petition must be dismissed because the FLRA has not had an opportunity to consider the changes the Union now desires.

The FLRA's assertion is misguided. *If* this case involved the FLRA's refusal to inaugurate a rulemaking proceeding to modify regulations that it concededly had statutory authority to issue, then we would indeed be bound to dismiss the Union's suit under 5 U.S.C. § 7123(c),[8] because the relief requested on appeal would have differed from that which the Union asked the FLRA to provide. But the gravamen of the Union's claim, both before the FLRA and on appeal, is that the FLRA *lacked statutory authority* to issue regulations unconditionally precluding an exclusive representative from obtaining ulp remedies for an agency's good-faith refusal to bargain over a proposal it alleged to be nonnegotiable. Although the Union appears unsure of the best means for repairing this alleged deficiency, the heart of its objection —that this restriction on the FLRA's remedial power is utterly inconsistent with the Statute and must be jettisoned—has remained the same. The FLRA addressed this contention in responding to the Union's petition, and the FLRA's counsel admitted in court that this is at least one of the complaints that the Union renewed on appeal. The issue is properly before us.

### B. *Standard of Review*

Under 5 U.S.C. § 7123(c), decisions of the FLRA are subject to review in accordance with the Administrative Procedure Act, 5 U.S.C. § 706. Courts must set aside agency actions, findings, and conclusions found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

The question before this court is solely one of statutory construction: are the final sentences of 5 C.F.R. §§ 2423.5 and 2424.5 inconsistent with congressional intent, as manifested in the text of the Statute and its legislative history? With regard to

---

7. The footnote in *Professional Drivers* to which the FLRA refers, *see* 706 F.2d at 1217 n. 2, provides no support for the FLRA's contention; in fact, that footnote does not so much as mention the reviewability of the General Counsel's refusal to issue an unfair labor practice complaint.

8. 5 U.S.C. § 7123(c) provides in relevant part:
   No objection which has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused by extraordinary circumstances.

such questions, the Supreme Court has stated:

> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984) (citations omitted).

It is therefore clear that courts need not defer to an agency's reading of a congressional enactment when, as here, that interpretation raises "a pure question of statutory construction for the courts to decide," rather than a "question of interpretation that arises in each case in which the agency is required to apply [a legal standard] to a particular set of facts." *INS v. Cardoza–Fonseca,* — U.S. ——, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). This court has recently construed the mandates of *Chevron* and *Cardoza–Fonseca* as follows:

> The principal charge of a court in statutory construction is to ascertain congressional intent. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." [*Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.] In performing this responsibility, "courts may substitute their interpretation of a statute for that of an agency whenever they face 'a pure question of statutory construction for the courts to decide,' rather than a 'question of interpretation [in which] the agency is required to apply [a legal standard] to a particular set of facts.'" *I & NS v. Cardoza–Fonseca,* — U.S. ——, ——, 107 S.Ct. 1207, 1225, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring in the result) (quoting majority op. at 1220–21). The courts need not defer to agency opinions on "pure questions" of interpretation. In those circumstances, however, in which an agency is required to apply a

legal standard to a particular set of facts, "the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program." *Id.* at 1221–22. In these situations, because the court is not faced with a "pure question of statutory construction," some deference is due the agency and the two-prong test of *Chevron* applies:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).[5]

> [5] In *Cardoza–Fonseca,* Justice Stevens (who also wrote the opinion for the Court in *Chevron*) strongly indicates that the interpretation of a statutory provision remains "a pure question of statutory construction for the courts to decide" even when the provision at issue admits of some ambiguity. 107 S.Ct. at 1220–21. Thus, the second prong of the *Chevron* test is only applicable with respect to circumstances when an agency is required to apply a legal standard to a particular set of facts, or when a court is unable to discern congressional intent after employing traditional tools of statutory construction.

*UAW v. Brock,* 816 F.2d 761, 764–65 & n. 5 (D.C.Cir.1987).

■ Because the Union's challenge to the consistency of 5 C.F.R. §§ 2423.5 and 2424.5 with the Statute from which they purportedly derive raises an unadulterated question of congressional intent, this court must review the language of the Statute, its legislative history, and predecessor regulations under Executive Order 11491, as amended, to determine whether the chal-

lenged regulations contravene congressional intent. If Congress' intent is clearly at odds with the regulations, then they must be struck down, notwithstanding the FLRA's contrary opinion. If, however, Congress' intent cannot be determined, then we must defer to the FLRA's interpretation of the Statute if we find that interpretation "permissible."

## C. *Congressional Intent Concerning Negotiability Appeals*

The concluding sentences of 5 C.F.R. §§ 2423.5 and 2424.5 categorically deny labor organizations ulp remedies for an agency's good-faith but mistaken refusal to discuss a bargaining proposal because its adoption would allegedly intrude on protected management prerogatives or offend federal law or a Government-wide rule or regulation, unless the agency's refusal is coupled with "actual or contemplated changes in conditions of employment." The FLRA's defense of these provisions in disposing of the Union's petition reads in its entirety:

> In our view, these regulations are consistent with the language of sections 7117 and 7118 of the Statute, which specify separate procedures for resolving negotiability and unfair labor practice cases, respectively. They are also consistent with the legislative history of the Statute, which indicates that Congress considered but rejected a provision which would have required all negotiability disputes to be resolved in unfair labor practice proceedings.
>
> Unfair labor practice remedies are available in appropriate refusal to bargain situations, such as (1) where the refusal to negotiate is accompanied by unilateral changes in conditions of employment; and (2) where an agency refuses to bargain over a proposal substantially identical to one which the Authority has previously determined to be negotiable under the Statute.

Decision on Petition for Amendment of Rules, R.A. 3–4 (citations omitted).

As the FLRA noted, the Statute provides separately for the processing of ulp charges and the expedited resolution of appeals from allegations of nonnegotiability. *See* 5 U.S.C. §§ 7117(c), 7118. However, the Statute does not explicitly address the question whether the FLRA may or should entertain ulp charges under 5 U.S.C. § 7118 that merely allege that an agency refused in good faith to bargain over what was later determined to be a negotiable proposal. The Statute does say that "it shall be an unfair labor practice for an agency ... to refuse to consult or negotiate in good faith with a labor organization as required by this chapter." 5 U.S.C. § 7116(a)(5). And the Statute does impose on agencies a duty to bargain in good faith over all negotiable proposals. 5 U.S.C. § 7117(a). But the Statute nowhere states or intimates than an agency's good-faith refusal to discuss a subject it alleges to be nonnegotiable constitutes a "refus[al] to consult or negotiate in good faith." Indeed, one might well infer that the reverse is true.

Certainly the creation of a special, expedited appeals procedure to resolve negotiability disputes at least permits, though it by no means compels, the inference that Congress intended that an agency's mistaken allegation of nonnegotiability not subject it to ulp liability. If, as the Union claims, "an actual refusal by management to bargain over a matter which is in fact a mandatory subject for bargaining is [perforce] an unfair labor practice," Brief for Petitioners at 14, then there would be scant reason to establish a second route for resolving questions of negotiability. If negotiability issues required expedited treatment for purposes of ulp determinations, they could have been given expedited treatment *on the ulp track*. Furthermore, if Congress was seeking to expedite negotiability determinations, it would be strange to require or allow negotiability disputes to wind their way through *two* channels rather than one.[9] The purpose of what was

---

**9.** It is conceivable that Congress established an expedited appeals procedure to allow negotiabil-

ity issues to be resolved rapidly so that bargaining could proceed while the FLRA considered

intended to be an expedited review procedure, one might reasonably surmise, was to allow the settlement of preliminary issues of negotiability before a bargaining session came to a close, without automatically subjecting an agency to what might prove exacting remedial measures if it asserted, in good faith, that certain subjects ought not be on the table.

From the standpoint of public policy, this reading of the Statute's equivocal text would also make sense. If federal agencies risked the retroactive imposition of unfavorable contract terms whenever they refused to negotiate over a labor organization's proposal, even if they honestly believed the subject nonnegotiable, then they would have a powerful incentive to bargain, even if the FLRA rarely chose such a drastic remedy. This incentive, in turn, might promote the erosion of those management rights protected by the Statute, if the agency bargained over the arguably nonnegotiable proposal in good faith; or lead to bad-faith stonewalling by management on the contested issue and perhaps further administrative sparring; or induce agencies to offer concessions on other matters they would make reluctantly and ought not be forced to make, in order to protect their management prerogatives. The separate, expedited negotiability appeals procedure might reasonably be viewed as an attempt by Congress to spare agencies the arguably unfair choice among these three evils.

This possible concern also supplies a response to the Union's contention that this court should look to decisions under the National Labor Relations Act in determining whether an agency's refusal to bargain over a negotiable proposal constitutes an unfair labor practice, however pure the agency's motives may have been. Although a private employer's refusal to negotiate over a mandatory subject of collective bargaining may violate the National Labor Relations Act, see NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962), the consequences for

the recalcitrant employer are less severe than they could be under the Statute. The Supreme Court held in H.K. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed. 2d 146 (1970), that remedial orders imposing contract terms with retroactive effect exceed the authority of the National Labor Relations Board. The Statute, in contrast, expressly allows such remedies. This distinction would amply explain Congress' desire, if indeed this was its purpose, to exclude from the class of unfair labor practices an agency's good-faith refusal to bargain over a proposal on the ground of nonnegotiability, but to provide labor organizations with some protection against agencies' unjustified stalling by establishing a mechanism to resolve negotiability disputes with special swiftness.

The foregoing conjecture is not inescapable. Nonetheless, it furnishes wholly legitimate bases, relied upon by the FLRA, to support the agency's interpretation of an admittedly ambiguous statute. It therefore suggests that the FLRA's regulations are "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

The legislative history of the Statute offers nothing to repair the ambiguity in its terms. The House Committee initially reported a bill that would have required all negotiability disputes to be handled in the same way as ulp charges. *See* H.R. 11,280, 95th Cong., 2d Sess. §§ 7117, 7118 (1978), *reprinted in* Subcomm. on Postal Personnel and Modernization of the House Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, at 409–14 (Comm.Print No. 96–7) (1979) ("Legis. Hist."). The Senate bill did provide for a separate negotiability appeals procedure. *See* S. 2640, 95th Cong., 2d Sess. § 7215(e)(3) (1978), *reprinted in* Legis.Hist. at 580. On the House floor, Representative Udall introduced an amendment to the

---

more extreme ulp sanctions. However, there is nothing in the Statute or its legislative history to

support this view.

House Committee bill establishing the negotiability appeals procedure that now appears at 5 U.S.C. § 7117(c). 124 CONG.REC. 29,179 (1978), *reprinted in* LEGIS.HIST. at 916. His section-by-section analysis, however, merely restated the terms of his proposed amendment, without shedding any light on its relationship to ulp proceedings. *See* 124 CONG.REC. 29,184 (1978), *reprinted in* LEGIS.HIST. at 927. No other member of Congress commented on the proposed negotiability appeals procedure on the House floor. The House adopted the Udall amendment, the House–Senate Conference Committee followed suit, the bill as so amended was passed by both the House and the Senate and signed by President Carter, and the separate negotiability appeals procedure became law, without any further elucidation by its congressional proponents, the Conference Committee, or any member of the legislative or executive branch.

The only remaining source of guidance is Executive Order 11491, as amended by Executive Order 11838, which provided a framework for resolving public sector negotiability disputes prior to the passage of the Statute. *See* Exec.Order No. 11,491, 3 C.F.R. 861 (1966–70 Comp.), *reprinted in* LEGIS.HIST. at 1244; Exec.Order No. 11,838, 3 C.F.R. 957 (1971–75 Comp.), *reprinted in* LEGIS.HIST. at 1336. The Executive Order system in place at the time when the Statute was debated and enacted provided for a negotiability appeals procedure separate from the procedure for handling ulp charges; only refusals to negotiate that were accompanied by unilateral changes in an established personnel policy, practice, or matter affecting working conditions were processed as unfair labor practices. *See* Exec.Order No. 11,491, 3 C.F.R. 868–69 (1966–70 Comp.), LEGIS.HIST. at 1250–51; Exec.Order No. 11,838, 3 C.F.R. 957, 960 (1971–75 Comp.), LEGIS.HIST. at 1336, 1339.[10] Moreover, if the Federal Labor Relations Council, in ruling on a negotiability appeal, found a matter to be within the scope of an agency's duty to bargain, it declared the matter negotiable but did not provide retroactive relief. *See, e.g., Federal Aviation Science & Technological Ass'n, NAGE and FAA, Dep't of Transp.,* 6 F.L.R.C. 723 (1978); *International Ass'n of Machinists & Aerospace Workers, Local Lodge 1859 and Marine Corps Air Station & Naval Air Rework Facility, Cherry Point, N.C.,* 6 F.L.R.C. 253 (1978). The FLRA's regulations preserve these features of the Executive Order system, which were not explicitly eliminated or modified by the Statute, by legislative statements in the course of its genesis, by a subsequent Presidential Order, or by prior decisions of the FLRA itself. They therefore might be deemed statutorily required by the Statute's grandfather provision, 5 U.S.C. § 7135(b), not merely the result of a "permissible" interpretation of the Statute, given the profoundly ambiguous connection between the negotiability

---

**10.** The FLRA maintains that the final sentences of 5 C.F.R. §§ 2423.5 and 2424.5 continue this exception by allowing refusals to negotiate to be processed as ulp charges when they "involve actual or contemplated changes in conditions of employment." *See* Brief for the FLRA at 23–25. This provision was apparently mandated by 5 U.S.C. § 7135(b), which states that "[p]olicies, regulations, and procedures established under and decisions issued under Executive Orders 11491 ... and 11838, ... as in effect on the effective date of this chapter, shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter." *See Federal/Postal/Retiree Coalition v. Devine,* 751 F.2d 1424, 1425–26 (D.C.Cir.1985) (emphasizing the significance of this grandfather clause).

The FLRA also contends that refusals to negotiate may incur ulp sanctions "where an agency refuses to bargain over a proposal substantially identical to one which the Authority has previously determined to be negotiable under the Statute." Decision on Petition for Amendment of Rules, R.A. 4. Although the Union contests the accuracy of this claim at some length, *see* Brief for Petitioners at 21–25, we see no reason to settle this spat, because no Executive Orders or decisions thereunder required this exception, because the Union did not raise this issue in its petition to the FLRA, and because the exception, if recognized by the FLRA, would only redound to the benefit of labor organizations, thereby preventing the Union from alleging injury to itself or its members.

appeals procedure and the mechanism for processing ulp charges.[11]

█ In view of the Statute's ambiguity and the legislative history's silence concerning the exclusivity of resort to the negotiability appeals procedure of 5 U.S.C. § 7117(c) to resolve disputes involving an agency's good-faith refusal to bargain over an allegedly nonnegotiable proposal, and in light of Executive Order practices that were consistent with and perhaps, in conjunction with 5 U.S.C. § 7135(b), even require the provisions contained in the final sentences of 5 C.F.R. §§ 2423.5 and 2424.5, we cannot reject the FLRA's reading of the Statute. This is a case in which we are "unable to discern congressional intent after employing traditional tools of statutory construction." *UAW v. Brock*, 816 F.2d at 765 n. 5. Therefore, we defer to the agency's judgment because it is "based on a permissible construction of the statute." *Id.* at 765 (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782).

## III. CONCLUSION

Because our use of the "traditional tools of statutory construction" has not enabled us to tease from the Statute, its legislative history, or prior practices a clear congressional intent regarding the limits, if any, on the remedies available to labor organizations that successfully appeal an agency's good-faith allegation of nonnegotiability, we uphold the FLRA's "permissible" interpretation of the Statute and deny the Union's petition for review.

*So ordered.*

STARR, Circuit Judge, concurring:

I concur in the judgment and in most of the court's opinion. I am unable, however, to agree with my colleagues that the union's position in this court is the position advanced before the Authority. As a result, I am constrained not to join in Part II(A)(2) of the court's opinion.*

My reservations about this rather narrow aspect of the case can be briefly stated. The union proposed to the Authority a sweeping proposal that would have eliminated the pertinent regulations in their entirety and substituted in their place a wholly new regime. That regime, among other things, would have worked a dramatic alteration of one salient feature of the existing statutory structure, namely elimination of the discretion vested in the General Counsel to determine whether an unfair labor practice complaint would issue in this genre of cases.

Having been rebuffed by the Authority, the union, as was its prerogative, repaired to our court. But, as the discussion at pages 3–6 of the opinion indicates, the position advanced by the union here is quite different from that proposed to the Authority. Eschewing its earlier proposal to rework fundamentally the manner in which such cases are handled, the union stated before us, more modestly, that it desired only to eliminate the last sentence of the existing regulations. On its face, this position is considerably less sweeping than the wholesale assault embodied in the union's position before the Authority.

As I read the statute, it is precisely such tactics that Congress intended to preclude. 5 U.S.C. § 7123(c) (1982). Orderly administration of the agencies of government, embodied in the judge-made doctrine of ex-

---

**11.** The Union contends that the Executive Order system was superseded by specific statutory provisions in several respects. *See* Reply Brief for Petitioners at 14–19. Because the correctness of these assertions would not necessarily affect the consonance of 5 C.F.R. §§ 2423.5 and 2424.5 with the Statute, we decline to judge the accuracy of these contentions.

* A continuing challenge for the lower courts, and especially our own tribunal, is to strike the appropriate balance between the roles of court and agency in the interpretation of statutes. The framework for striking the balance, I believe, was definitively laid down by the Supreme Court in *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and is further elucidated in *INS v. Cardoza-Fonseca*, —— U.S. ——, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). In my view, today's result and much of the court's analysis accurately articulates the operative standard and achieves the *Chevron*-mandated balance. For my part, I continue to believe that *Chevron's* two-step interpretative process, which was reaffirmed in *Cardoza-Fonseca,* provides the polestar that is to guide us.

haustion and sanctioned by Congress in a variety of statutes, *see, e.g.,* 29 U.S.C. § 160(e) (1982), requires parties to formulate and present their positions before the agency. On appeal, it is too late in the day to overhaul an unsuccessful proposal advanced to the agency and attempt to wrap it in more modest, less provocative garb.

Laying the two proposals side by side, the differences between them are simply too manifest for me in conscience to conclude that the position advanced by the union in this court is the position advanced to the agency. That being the case, I am thus constrained to disagree with the analysis of my colleagues in this limited respect.

D.H. GINSBURG, Circuit Judge, concurring:

I concur in the court's opinion except as noted in the final paragraph below. I write separately in order to address the two concerns raised in Judge Starr's concurring opinion.

First, like Judge Starr, I am troubled by the difference between the proposal the Union originally submitted to the FLRA and the somewhat narrower proposal that the Union has brought before this court. One aspect of the original proposal appeared to give unions the option of requiring the General Counsel to issue unfair labor practice complaints in cases involving negotiability disputes. The proposal before this court differs substantively insofar as it leaves the General Counsel that option.

The FLRA rejected the original proposal not because of the obligation it put upon the General Counsel, however, but for a different reason—one of statutory construction—that *necessarily* extends to the proposal before this court. It is abundantly clear from the opinion below and from the briefs in this court that the FLRA's interpretation of the Act would require the rejection of the Union's revised, narrower proposal.

Therefore, albeit only after some hesitation, I join the court in reaching the merits of this case. My hesitation reflects my concern that union counsel in other cases will misinterpret our decision. Notwithstanding our indulgence of this appeal, counsel should not in any way entertain the notion of bringing new improved proposals on appeal in future cases.

Second, I note my shared concern with the reservation Judge Starr has about the interpretation of *Chevron* and *Cardoza-Fonseca.* Because any doubts about the proper understanding of those decisions do not affect the outcome of this case, however, I find it unnecessary to resolve them.