**ADVANCE TRANSPORTATION COMPANY, Petitioner–Appellant,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondent–Appellee.**

No. 88–2741.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1989.

Decided Sept. 5, 1989.

Truman Q. McNulty, Daniel M. Leep, Mulcahy & Wherry, Milwaukee, Wis., for Advance Transp. Co.

Anton R. Valukas, U.S. Atty., Office of the U.S. Atty., Chicago, Ill., for U.S.

Victoria J. Dettmar, I.C.C., Washington, D.C., for I.C.C.

Before BAUER, Chief Judge,
CUDAHY and KANNE, Circuit Judges.

BAUER, Chief Judge.

Appellant, Advance Transportation Company (Advance), seeks judicial review of an order issued by the Interstate Commerce Commission (ICC). Because this court does not have jurisdiction to review the order from which Advance appeals, the appeal is dismissed.

## I.

Advance is an interstate trucking company subject to regulation by the ICC. In 1986, Advance filed a Petition for Rulemaking to Amend Rule, challenging the validity of the bill overpayment regulations which were promulgated by the ICC in 1978. See *Overcharges, Duplicate Payment, or Overcollection Claims*, 358 I.C.C. 114 (1978) (*Overcharge I*).[1] (The regulations are currently codified at 49 CFR 1008.3–1008.8 and 49 CFR 1008.9(a)-(b)). The ICC initiated rulemaking in response to complaints by shippers that carriers were failing to acknowledge overpayments caused by billing mistakes. The regulations which were adopted provide uniform procedures for a carrier to follow when the carrier receives a claim from a shipper that an overpayment has been made, and when it discovers a potential overpayment in the absence of a claim from a shipper. In its petition for rulemaking, Advance claimed

that compliance with the regulations was difficult because they were vague and ambiguous.[2] In particular, Advance complained that "overpayment" was not explicitly defined in the definitional section of the rules. (According to Advance, overpayment was "a term of art subject to alternative meanings.")[3] The ICC denied the petition, finding that the regulations were clear and unambiguous. With respect to Advance's specific complaint, the ICC noted that "although not specifically defined, it is clear from language in section 1008.9(b) that 'overpayment' refers to excess amounts remitted by the payor for transportation services to the collecting carrier."

On September 4, 1987, Advance filed a petition seeking reconsideration of the ICC's order refusing to reopen rulemaking on the overpayment regulations. Advance alleged that the ICC's decision involved "material error." The ICC denied this second petition. Advance now seeks judicial review of the ICC's *second* order denying reconsideration, again alleging that the ICC's decision involves "material error."

## II.

■ Advance directs most of its arguments before this court toward the validity of the overpayment regulations promulgated in 1978 and 1979. The scope of judicial review of agency regulations, after the expiration of the 60–day jurisdictional

1. The ICC subsequently modified *Overcharge I* in *Overcharge, Duplicate Payment, or Overcollection Claims*, 359 I.C.C. 211 (1978) (*Overcharge II*) and *Overcharge, Duplicate Payment, or Overcollection*, 362 I.C.C. 25 (1979) (*Overcharge III*). The revisions were made, after additional notice and comment, primarily to clarify some of the terms used in the regulations.

2. Advance has a history of disputes with the ICC over its overpayment regulations. In 1977 (prior to the regulations' enactment, but during the rulemaking period), the ICC filed an injunctive action against Advance for failing to return overpayments. *Interstate Commerce Commission v. Advance Transportation Company*, Civil No. 77–C–708 (E.D.Wisc.1977). This action was settled after Advance agreed to "refund all duplicate payments, said refunds to be in accordance with the current version of 49 Code of Federal Regulations, Part 1008, or any other

applicable regulation which may be issued by the Interstate Commerce Commission." In 1985, the ICC brought another action against Advance for failing to refund overpayments to shippers in a timely manner. *Interstate Commerce Commission v. Advance Transportation Company*, Civil No. 85–C–0679 (E.D.Wisc.1985). On February 24, 1989, upon stipulation of both parties, the district court ordered Advance "be permanently enjoined from failing to process and dispose of duplicate payments and overpayments within 30 days of discovery, as required by 49 CFR § 1008.9(b)."

3. According to the dictionary, "overpayment" is the noun form of the verb "overpay," which means "to pay too much to or for." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1741 (2d ed.1950). A fairly understandable concept, it would seem.

time limit, *see* 28 U.S.C. § 2341 *et seq.,* is very limited. Once the statutory limitations period has expired, an agency's regulations may be attacked in two ways. First, a party with standing, such as a defendant in an enforcement proceeding, may directly challenge the regulations on the ground that the issuing agency acted in excess of its statutory authority by promulgating them. *See NLRB Union v. FLRA,* 834 F.2d 191, 195 (D.C.Cir.1987). Thus Advance could have challenged the overpayment regulations in either of the two injunctive proceedings brought against it by the ICC. Second, a party can indirectly challenge agency regulations by petitioning the agency for amendment or rescission of the regulations and then appealing the agency's decision. *Id.* at 196. The standard of judicial review in this situation depends upon the type of challenge to the regulations made by the petitioner. There are three types of challenges: one, that the regulation suffers from a procedural infirmity; two, that it conflicts with the statute from which its authority derives; and three, that it suffers from some substantive deficiency other than the agency's lack of statutory authority. *Id.* Advance petitioned the ICC to reopen the rulemaking on the basis that the regulations were vague and ambiguous, thus bringing the third type of challenge. Had Advance appealed this order, the scope of judicial review would have been "limited to the *'narrow issues as defined by the denial of the petition for rulemaking,'* and [would not have extended] to a challenge of the agency's original action in promulgating the rule." *Id. (quoting Professional Drivers Council v. Bureau of Motor Carrier Safety,* 706 F.2d 1216, 1217 n. 2 (D.C.Cir.1983) (emphasis added)).

■ Advance, however, did not appeal the ICC's order denying the petition for rulemaking. Instead, Advance appeals the ICC's order denying reconsideration of its petition for rulemaking. Advance had sought reconsideration on the basis that the refusal to reopen rulemaking involved "material error." In light of the Supreme Court's decision in *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), we do not have jurisdiction to review the ICC's order denying reconsideration of its earlier order. In *Locomotive Engineers,* the ICC approved a control acquisition of one railroad by another. Later, the Brotherhood of Locomotive Engineers (BLE) filed a petition to reopen the proceeding (although styled as a petition for clarification), seeking a declaration that the ICC approval order did not affect crew selection procedures. The ICC denied the petition and then BLE and United Transportation Union (UTU) filed a petition for reconsideration of the denial. After the ICC denied the request for reconsideration, BLE sought judicial review of the ICC's order denying clarification. Both BLE and UTU sought review of the ICC's order denying reconsideration on the ground that the denial of reconsideration involved "material error." The Supreme Court dismissed the appeals from both ICC orders. With respect to the reviewability of the order denying reconsideration, the Court distinguished between appeals based upon an allegation of material error and those based upon an allegation of "new evidence" or "changed circumstances:"

> [W]here no new data but only "material error" has been put forward as the basis for [reconsideration], an appeal places before the courts precisely the same substance that could have been brought there by appeal from the original order— but asks them to review it on the strange, one-step-removed basis of whether the agency decision is not only unlawful, but so unlawful that the refusal to reconsider it is an abuse of discretion. Such an appeal serves no purpose whatever where a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency [footnote omitted] (and within the period allotted for judicial review of the original order), since in that situation the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts *directly* after the petition for reconsideration is denied. And where the petition is filed *outside* that period (and outside the period for judicial review of the original order) judicial review should serve only the peculiar purpose of ex-

tending indefinitely the time within which *seriously* mistaken agency orders can be judicially overturned.

*Id.* at 279–280. The Court concluded that "where a party petitions an agency for reconsideration on the ground of 'material error,' i.e., on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of ... [the prior] order is not itself reviewable.' " *Id.* at 280 (*quoting Microwave Communications, Inc. v. FCC,* 515 F.2d 385, 387 n. 7 (D.C.Cir.1974)). *See also John D. Copanos and Sons, Inc. v. FDA,* 854 F.2d 510, 527 (D.C.Cir.1988); *Western Pacific Stockholders' Prot. Com. v. ICC,* 848 F.2d 1301, 1303 (D.C.Cir.1988).

■ In this case, Advance petitioned the ICC for reconsideration of its order denying rulemaking on the basis that the decision to deny rulemaking involved "material error." It then appealed only the order denying reconsideration. This order is not reviewable [4] and therefore Advance's appeal is dismissed.

---

**4.** We, in no way, mean to discourage resort to discretionary agency review available pursuant to 49 CFR § 1115.3 (1986). A party petitioning an agency for reconsideration of the agency's original order will not lose the right to appeal the original order: the petition for reconsideration tolls the period for judicial review of the original order. *Locomotive Engineers,* 482 U.S. at 279, 107 S.Ct. at 2366. After a petition for reconsideration is denied, then a party may directly appeal the original order. *Id.*