976 F.2d 45
 298 U.S.App.D.C. 97
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
AMERICAN MINING CONGRESS, Petitioner,
v.
UNITED STATES DEPARTMENT OF LABOR, and Secretary of Labor
for Mine Safety and Health, and Mine Safety and
Health Administration, Respondents.
 No. 92-1067.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 10, 1992.
 
 Before WALD, BUCKLEY and D.H. GINSBURG, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 Upon consideration of the petitioner's motion for summary disposition or stay, which includes a suggestion that this petition for review be assigned to the same panel as No. 88-1708, Coal Employment Project v. Martin; the response thereto and the reply, it is,
 
 
 2
 ORDERED that this petition be assigned to the same panel as No. 88-1708, Coal Employment Project v. Martin. It is
 
 
 3
 FURTHER ORDERED that petitioner's motion for summary disposition or stay of Program Policy Letter No. P92-III-1 ("PPL 92"), issued by the Mine Safety and Health Administration on January 24, 1992, be denied. The merits of the parties' positions are, however, so clear as to justify summary action. It is, accordingly,
 
 
 4
 FURTHER ORDERED, on the court's own motion, that the petition for review be denied for the reasons set out in the accompanying memorandum.
 
 
 5
 The Clerk is directed to file the lodged documents, and to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 6
 The Secretary of Labor's interpretation of the court's interim mandate in Coal Employment Project v. Martin, 889 F.2d 1127 (1989) ("CEP "), is correct. Thus, in assessing single penalties for non-significant-and-substantial violations after the date of the CEP interim mandate, the Secretary's enforcement policy correctly takes account of the history on the part of mine operators of both significant-and-substantial and non-significant-and-substantial violations.
 
 
 7
 While the CEP interim mandate failed explicitly to refer to significant-and-substantial violations, it is clear from the CEP opinion that both serious and nonserious violations must be considered in the excessive history calculation. Indeed, the CEP opinion contains numerous references to the need to ensure that all penalties take account of a mine operator's entire violation history. See, e.g., CEP, 889 F.2d at 1131 ("[W]e believe that the [Mine] Act requires the Secretary, when assessing penalties ... to consider an operator's history of previous violations...."); at 1133 ("[W]e conclude that Congress was intent on assuring that the civil penalties provide an effective deterrent against all offenders, and particularly against offenders with records of past violations."); and at 1138 (directing the Secretary to establish regulations clarifying how administration of the single penalty standard will take account of the history of violations "that do and do not pose significant and substantial threats to miners' safety."). The underlying purpose of the CEP opinion and mandate was to conform the Mine Safety and Health Administration's actions to our construction of the statute, which required the inclusion of a mine operator's violation history in calculating future penalties. As the Secretary correctly observed, it would distort the purpose of the mandate and statute, as well as effect an absurd result, if significant-and-substantial violations were excluded from the excessive history calculation, even during the interim period before final regulations are adopted.
 
 
 8
 Petitioner has also raised a question, not addressed in the CEP interim mandate, concerning the possibility that the Secretary's enforcement policy is unlawfully retroactive. The court perceives no retroactivity problem in applying Program Policy Letter 92 ("PPL 92"). Both the November 29, 1989 CEP decision and the Secretary's Program Policy Letter issued on May 29, 1990, which employed the same enforcement methodology as PPL 92, put mine operators on notice that their history of violations would play a role in assessing non-significant-and-substantial violations. The court is concerned, however, that inclusion of violations which occurred before the date of the CEP interim mandate in the excessive history calculation might present a retroactivity problem. Accordingly, the Secretary should be sensitive to this issue in the course of ongoing penalty proceedings involving PPL 92.
 
 
 9
 United Safety Associates, in its response amicus curiae to the Secretary's request for clarification of the CEP interim mandate (which we deny by separate order this date), argues that the court lacks subject matter jurisdiction over the Secretary's enforcement policy. This argument is based on the fact that the original CEP petition was filed six years after the Secretary issued the civil penalty rules at issue.
 
 
 10
 Challenges to regulations issued pursuant to 30 U.S.C. § 957 are not subject to any explicit time limitation. Both the Secretary and the CEP petitioners drew the court's attention to this issue during the course of the proceedings before the panel issued the CEP decision. Although the court did not explicitly rule on the question whether the lapse of six years between issuance of the civil penalty rules and the filing of the CEP petition deprived the court of subject matter jurisdiction, the court implicitly rejected that argument by rendering a decision on the merits. Moreover, even if a definite statutory time limit applied to the CEP petition, a party may challenge an administrative regulation outside of the statutory limit where, as here, the issuing agency acted in excess of its statutory authority. See NLRB v. FLRA, 834 F.2d 191 (D.C.Cir.1987); Functional Music, Inc. v. FCC, 274 F.2d 543 (D.C.Cir.1958), cert. denied, 361 U.S. 813 (1959).