EDITH H. JONES, Circuit Judge,
dissenting:
With due respect to my colleagues, I am not convinced that the statute of limitations has run against Dunn-McCampbell in this case. I would reverse and remand for further proceedings that would elicit when Dunn-McCampbell first began to be injured by the cost of compliance with the regulations.
It is important to clarify, as the majority has not done, that under Texas law, DunnMcCampbell was prevented in two ways from being able to challenge the Park Service regulations while it remained simply a lessor/overriding royalty owner, whose mineral interest was being developed by other operators. Its interest was a non-possessory interest with a possibility of reverter when the leases terminated. First, the holder of an overriding royalty in Texas bears no portion of the production costs; its interest is based on gross production from the wells. Hence, Dunn-McCampbell could not have been charged for any increased operating costs caused by the Park Service regulations and suffered no injury that could confer standing to sue the government. Additionally, the lease operator in Texas is responsible for prudently developing and maintaining the xnineral lease, a responsibility which includes the obligation to pursue administrative remedies to benefit the lease. Amoco Production Co. v. Alexander, 622 S.W.2d 563, 570 (Tex. 1981); R. Hemingway, Texas Law of Oil & Gas, § 819(D) (3d ed.1991). It fell to the lessee, Sun, rather than Dunn-McCampbell as lessor to maintain a lawsuit against the Park Service while Sun was operator, but as noted, such a lawsuit could produce immediate monetary damages only for Sun.
Because of the parties’ state law and contractual positions, which surely should not be ignored for standing purposes, DunnMcCampbell could not have sued the Park Service before it began to reacquire its leases in 1986-89. Limitations on certain challenges to the regulations could not begin to run against Dunn-McCampbell until that time.
The only legal question, then, is what kind of claims Dunn-McCampbell could advance after 1986-89 against the Park Service, when it acquired standing to sue. I agree with the majority that by the time Dunn-McCampbell achieved standing, it could not challenge the “procedural” basis for the Park Service’s 1979 regulations. According to terminology developed in the D.C. Circuit, “procedural” challenges address the agency’s compliance, with rulemaking requirements such as notice and comment, while “substantive” challenges attack the regulation’s compliance with statutory authority or other substantive deficiency. See generally N.L.R.B. Union v. FLRA, 834 F.2d 191, 195-97 (D.C.Cir.1987). Because it is imperative to the administrative process that procedural challenges be posed at the onset of a newly-promulgated regulation, a number of agency statutes set very short deadlines, e.g. 60 days, on initiating such claims. See, e.g., id. The Park Service lacks such organic statutory protection, however, so the six-year general federal limitations statute governs procedural challenges in this ease, and no party, including DunnMcCampbell, could pursue these challenges after 1985.
It is equally well settled, however, that if an agency regulation is not authorized by its governing statute,[3] a party injured by appli *1290 cation of the regulation may raise the issue outside the statutory limitations period; a regulation initially unauthorized by statute cannot become authorized by the mere passage of time. The point that divides the majority and me is their insistence that the agency’s lack of statutory authority could be raised by Dunn-McCampbell only in defense against an agency enforcement action or if the company petitions to rescind or amend the Park Service regulations and receives an adverse decision. I differ with the majority over what kind of “injury” from agency “action” is necessary to precipitate the claim. In my view, it is a waste of time to require as a prerequisite to suit that Dunn-McCampbell manufacture “agency action” by petitioning the Park Service to revoke its regulations and suffering — at some time in the possibly remote future — the inevitable rebuff. DunnMcCampbell claims that the existence of Park Service regulations renders it uneconomic for new operators even to bid on reinstituting production from its Padre Island mineral rights.[4] The company seeks declaratory judgment relief from the regulation’s onerous effect. This claim may or may not be well-founded, but it definitely alleges injury occasioned by agency action, consisting of the overlay of numerous Park Service regulations and the constantly changing and thus unpredictable nature of the regulations. Consequently, if Dunn-McCampbell filed suit within six years after it effectively reacquired its leases, its action is timely.
We must recall the essence of DunnMcCampbell’s legal claim — that when Padre Island Park was transferred to the federal government, Texas reserved the right to regulate oil and gas production from DunnMcCampbell’s mineral interests, which were never transferred to federal jurisdiction. If this claim is correct, the Park Service has not had jurisdiction to regulate at all. DunnMcCampbell poses a straightforward, albeit complex, legal issue readily amenable to judicial review. Under the particular facts of this case, it is perverse for the majority to require Dunn-McCampbell to spend a lot of time and money petitioning the agency to reconsider its authority simply to lay the predicate for a future lawsuit.[5] If DunnMcCampbell has sued within six years of the dates it began effectively reacquiring leases, I would allow this suit to go forward.

. While nearly all the courts that have decided these questions analytically distinguished between "procedural” and "substantive” challenges, as I have done, the majority identifies only "facial” and “as applied” challenges to the regulations. The majority's terminology is unnecessarily confusing. A "facial” challenge could attack the procedure, the substantive basis, or the regulation’s subservience to its governing statute, and under prevailing law, only the first type of challenge is absolutely barred within fixed periods after the statute has been promul *1290 gated. Despite the majority's failure to conform to the more common analytical distinction, I do not understand their opinion to disagree with those cases.

. See Public Citizen v. Nuclear Regulatory Comm'n, 901 F.2d 147, 152 (D.C.Cir.1990) ("were we to hold in this case that Public Citizen’s challenge to the lawfulness of the NRC's action was untimely, Public Citizen could file a petition for rulemaking and then raise its claim of unlawfulness when the Commission denied the petition. Such a requirement would be a waste of everyone's time and resources.”)

. For this reason, it is not material that DunnMcCampbell has not approached the Park Service with plans to develop the leases. According to its allegations, to do so would require an operator to invest considerable resources in making a good-faith estimate of the costs of its operations and the hindrances caused by Park Service regulations — and all this would be done simply to precipitate a lawsuit. Under these circumstances, Duim-McCampbell's claim is ripe for adjudication.